Hurd v. Cass.

---

CHEMUNG SPECIAL TERM, September, 1850. *Mason,* Justice.

HURD *vs.* CASS.

The act of April 7, 1848, for the more effectual protection of the property of married women, was not intended to deprive the husband of his estate as tenant by the curtesy in his wife's real estate, in case of his surviving her.

Since that statute, the husband, during coverture, has no interest in the wife's lands which he can use or transfer, or which his creditors can in any manner reach.

The estate is vested in the wife, during coverture, and upon her death after

issue born, leaving her husband surviving, it descends to her heirs, charged with his rights as tenant by the curtesy. If there has been no issue of the marriage, then the estate becomes perfect and absolute in her heirs.

THIS was an action of ejectment, to recover the possession of the premises described in the complaint. On the 20th day of November, 1845, the plaintiff was married to Caroline A. Hurd. On the 20th day of December, 1849, Samuel A. Campbell and wife being seised in fee of the premises in question, conveyed the same by deed to the said Caroline A. the wife of the plaintiff. She departed this life on the 18th day of April, 1850, leaving the plaintiff, her husband, and an infant daughter, the fruit of said marriage, her surviving. This infant daughter was born on the 10th day of May, 1849, and is still living. The jury found a verdict for the plaintiff, subject to the opinion of the court.

*Love & Freer*, for the plaintiff.

*E. &. G. E. Quin*, for the defendant.

MASON, J. The third section of the act of April 7th, 1848, entitled "An act for the more effectual protection of the property of married women," as amended by the act of April 11th, 1849, reads as follows: "Any married female may take by inheritance, or by gift, grant, devise or bequest from any person other than her husband, and hold to her sole and separate use, and convey and devise, real and personal property, and any interest or estate therein, and the rents, issues and profits thereof, in the same manner, and with the like effect, as if she were unmarried. And the same shall not be subject to the disposal of her husband, nor be liable for his debts." This statute, undoubtedly, was intended to vest the title to real estate conveyed to the wife during coverture, in her, and to secure it to her sole and separate use, beyond the control of her husband or his creditors. And where the intention of the legislature is apparent it is the duty of the courts to see that the design and object of the statute is not eluded by construction, but on the contrary, is per-

mitted to have its full effect and operation. (15 *John.* 358.)
There is no doubt, in my mind, that the legislature intended by
this statute to allow a feme covert to take by inheritance or gift,
grant, devise or bequest, from any person other than her hus-
band, and to hold to her sole and separate use, both real and
personal property, or any interest therein, and the rents, issues
and profits thereof, in the same manner and with the like effect
as if she were a feme sole.   There is no doubt that this statute
was intended thus to authorize her to take and hold property,
and that it was intended also to authorize her to take and hold
the same to her sole and separate use, free from all liability for
her husband's debts, and free from his disposal; investing the
wife also with full power and authority to convey the same by
deed or devise.   A much more difficult question, however, is pre-
sented by the case under consideration ; and that is whether the
statute above referred to cuts off, if I may be allowed the expres-
sion, that estate which, upon the principles of the common law,
the husband acquired in the wife's lands at her death where
there was a child born alive, of the marriage, and which estate is
by the common law called a tenancy by the curtesy, and which
is in fact a life estate in the husband, initiate on issue born, and
consummate on the death of the wife.   (4 *Kent's Com.* 29.)   I
feel constrained to say, after the most careful examination I
have been able to bestow on this statute, that it does not extend
to the case under consideration.   The statute allows the wife to
take and hold to her separate use real as well as personal prop-
erty, and authorizes her to convey the same, or to dispose of it
by a valid will executed in conformity to our statute.   But the
statute was never intended to interfere with the laws of descent
in regard to real estate.   The design and object of the statute is
fully answered by allowing the wife to take and hold real estate as
a feme sole to her sole and separate use, and to convey the same
by deed, or dispose of it by a valid devise.   And the rule of
construction is a familiar one, that it is not to be presumed that
the legislature intended to make any innovation upon the com-
mon law, further than the case absolutely required.   (1 *Kent's
Com.* 464, 3d ed.)

The view which I have taken of this statute is greatly strength-
ened by the principles of the common law.   Lord Hardwick
decided, in the case of *Roberts* v. *Dixwell*, (1 *Atk.* 607,) that
the husband might have his curtesy in an estate devised to the
wife for her separate use.   And although there was at one time
some conflict in the adjudications upon the subject, the law is
well settled at the present day that the husband is to be consid-
ered tenant by the curtesy if the wife has an equitable estate of
inheritance, notwithstanding the rents and profits are to be paid
to her separate use during coverture.   The receipt of the rents
and profits is a sufficient seisin in the wife.   (*Pill* v. *Jackson*, 3
*Bro.* 51.   *Morgan* v. *Morgan*, 3 *Madd.* 248.   4 *Kent's Com.*
31, 3*d ed.*)   And it is now settled in equity that the husband
may be a tenant by the curtesy of an equity of redemption and
of lands of which the wife had only a seisin in equity, as a cestui
que trust.   (4 *Kent's Com.* 30.)   It is contended, however, that
this construction of the statute under consideration is not admis-
sible, as the latter clause of the section provides that the prop-
erty so held by a feme covert " shall not be subject to the disposal
of her husband nor be liable for his debts."   This clause of the
statute does not conflict with the views above expressed, and it
should be borne in mind that this statute was passed to protect
the property of married women to their separate use during cov-
erture, investing the wife also with power to convey the same
by deed or devise.   At common law, also, the husband, upon the
marriage, became seised of a freehold estate, *jure uxoris*, in the
wife's lands, and took the rents and profits thereof during their
joint lives.   (2 *Kent's Com.* 130, 3*d ed.*)   This was such an in-
terest as the wife might transfer, or as was liable to be sold for
his debts ; and it was probably this interest of the husband in
the wife's lands to which this clause of the statute has reference,
and not to an interest which alone vests and becomes consumma-
ted on the death of the wife, where there is a child born alive
of the marriage.   All that this statute was ever intended to ac-
complish was to protect the property in the wife during cover-
ture, and to empower her to convey the same by deed or devise.
The statute was never intended to change the direction of the

real estate upon the wife's death, unless she herself had changed it by a valid devise. The laws of descent remain unchanged by its enactments; and the real estate, by the law of descent, is cast the same as if this statute had never been passed. The statute cuts off most emphatically all that freehold estate which the husband acquired *jure uxoris* during coverture, and which, as we have said, was a freehold estate during their joint lives; and the husband has now, during coverture, no interest in the wife's lands which he can use or transfer, or which his creditors can in any manner reach. The estate is vested in the wife during coverture, and upon her death descends to her heirs charged with the incumbrance of the husband's rights as tenant by the curtesy if there has been a child born alive of the marriage; if none, then the estate becomes perfect and absolute in her heirs. I am of opinion, therefore, for the reasons above stated, that the plaintiff in the case under consideration is to be regarded as tenant by the curtesy of the lands described in the complaint; because the statute referred to does not extend to the case. Consequently it is not necessary to consider the questions raised as to the validity of this statute. There is no force in the objection raised by the defendant's counsel, that the defendant's tenancy was not terminated at the time this suit was commenced. The defendant was a tenant at will. (2 *Cowen*, 169. 11 *Wend.* 616.) And this tenancy was terminated by a month's notice to quit, under the statute. (1 *R. S.* 745, §§ 7, 8, 9.) There must be a judgment for the plaintiff that he recover the possession of the premises described in the complaint, with costs.