## SUPREME COURT.

### LANSING agt. GULICK.

The common law right of the husband as *tenant by the curtesy is not abolished* by the acts of 1848 and 1849, for the more effectual protection of the property of married women; but is subject to be defeated by a disposition of the property by the wife during her life by deed or will.

An action of *partition* cannot be prosecuted by or in behalf of *an infant* as plaintiff, without the appointment by the court of a *next friend*, pursuant to the act of 1852.

Such next friend must give *security*, as required by that act.

An appointment of a *guardian* to protect the interest of an infant plaintiff in partition, under section 116 of the Code of Procedure, *is a nullity*.

Nor will partition be ordered upon the application of an infant, unless it be made satisfactorily to appear that the interests of the infant require such partition or sale.

*Saratoga Special Term, October,* 1863.

THE facts of the case sufficiently appear from the opinion of the court.

M'MARTIN & AKIN, *for pl'ffs.*
WELLS & DUDLEY, *for def'ts.*

BOCKES, J. This is an action for partition, and is brought by a father and his two infant children against Gulick and wife—Gulick, as is charged, holding an undivided interest in the premises as tenant in common with them.

Lansing, the father, claims an interest in the premises as tenant by the curtesy. It has been held in some cases that the acts of 1848 and 1849, for the more effectual protection of the property of married women, abolished tenancy by the curtesy. (28 *Barb.* 343; 11 *How.* 176.) But I think a different rule is now well established. (9 *Barb.* 366; 16 *id.* 556; 28 *id.* 633; 17 *id.* 157; 22 *N. Y.* 110; 22 *id.* 517; 24 *id.* 372.) These cases are not all directly in point, but by parity of reasoning they are conclusive of the question. In *Remsen* agt. *Nichols,* (22 *N. Y.* 110,) the court say that the effect of the laws of 1848 and 1849, is to place the separate property of a married woman entirely at her disposal during her life, with the right of disposition by will. But if she fail to make any disposition of it, and die intestate, the husband has all the rights given him by the common law and by the unrepealed provisions of the statute; and it was held that the separate personal estate of a married moman, who dies intestate, passed to her husband according to the rules of the common law. This is in affirmance of the decision in *Shumway* agt. *Cooper,* (16 *Barb.* 556,) where ALLEN, J., says that the evident purpose of these acts was to secure to the wife the absolute enjoyment of her property, with the right to dispose of it by will or otherwise during her life; and he adds: "I see no reason to suppose that the legislature designed to interfere with its course

after her death if she elected that it should go in the direc-
tion given it by law.   The statute is for the personal
benefit and security of the wife, and not of her kinsfolk."
He adopts the opinion that if she omit to exercise her right
of disposal, it would be good evidence of her intention that
her husband should enjoy it after her decease according to
the rules of the common law.   I deem these views entirely
sound.   It is settled in the court of appeals that they con-
trol in regard to personal property, and they apply with
equal propriety and potency to the wife's real estate left
undisposed of at her decease.   The right of tenancy by the
curtesy still exists, notwithstanding the acts of 1848 and
1849, subject, however, to be defeated by the wife by any
disposition of the property in her lifetime by deed or will.
According to the allegations of the complaint, Abram Lan-
sing had a life estate as tenant by the curtesy in the prem-
ises sought to be partitioned.   But on the trial it was shown
that he had parted with this right by deed of conveyance
to Silas Shutts, prior to the commencement of the action.
He therefore had no right to ask for partition, either alone
or jointly with others, and the complaint must be dismissed
as to him.

The other two plaintiffs are infants under the age of
twenty-one years.   Prior to the act of 1852 (*Sess. Laws of
1852, ch.* 277, *p.* 411) none but persons of full age could
apply for partition.   (2 *Rev. Stat.* 317, § 1; also 329, § 79;
13 *How.* 104; 4 *Sandf. Ch.* 508; 21 *How.* 479; 34 *Barb.* 106.)
By this act (1852) the supreme court may authorize pro-
ceedings to be instituted on behalf of infants for a division
and partition of their real estate held in joint tenancy or
tenancy in common, but such authority shall not be given,
nor shall a division or partition be directed by the court,
unless it shall be made satisfactorily to appear that the
interests of the infants require a partition or sale, and the
court shall appoint a competent next friend to conduct
the proceedings on the part of the infant, who shall be

appointed upon like application and in like manner, and shall give such security and possess such powers as are specified and required on the appointment of guardians in actions for partition. These provisions have not been complied with. It is true an order was procured appointing Daniel Cameron the guardian of the infants to take charge of their interests, but this order, which is not even a formal compliance with the requirements of the law, was obtained on a petition of one of the infants, merely stating their infancy; that they were about to commence an action in partition, and had no general or testamentary guardian. This was an application under the Code of Procedure, as in ordinary cases, whereas the law requires other statements, formalities and proceedings when the action is to be for partition of real property. (*Secs.* 1 *and* 2 *of Laws of* 1852, *ch.* 277; 13 *How.* 104; 15 *id.* 383; 21 *id.* 479.) The law declares that authority to prosecute the action shall not be given unless it shall be made satisfactorily to appear that the interests of the infant require partition or sale. There was no attempt to comply with this provision, and the order appointing Mr. Cameron guardian is, as regards this statute, simply a nullity. The defect is more than formal: it is radical. In *Clark* agt. *Clark*, (21 *How.* 479,) the court discharged a purchaser under a decree of sale in partition because of the non-compliance with this provision of law, and directed the money paid on the purchase to be refunded. In *Lyle* agt. *Smith*, (13 *How.* 104,) it was held that there was no right or authority to commence the action until a next friend was appointed by the court pursuant to the act of 1852, who should give security as required by the Revised Statutes on appointment of a guardian for an infant in partition.

Again: section two of the act of 1852 declares that such authority shall not be given, *nor shall such division, partition or sale be directed by the court*, unless it shall be made satisfactorily to appear that the interests of the infant

require such partition or sale. There is not now, and, so far as I can determine, there never has been any proof before the court to meet or answer the requirement of the law in this regard. The complaint must be dismissed also as to the infant plaintiffs, but without costs against them. I can, however, see no reason why Abram Lansing should not be charged with costs. As to him the complaint must be dismissed with costs.

The judgment must state that the dismissal of the complaint is without prejudice to the rights of the parties, or any of them, to the lands and premises, and without prejudice to any other or further action or proceeding in regard thereto.

Complaint dismissed.