## SUPREME COURT.

### JOHN M. JAYCOX and others, appellants agt. ELIHU B. COLLINS, respondent.

The estate of a *tenant by the curtesy*, has *survived* the acts passed in 1848 and 1849, "for the more effectual protection of the rights of married women."

Those acts were intended to allow a married woman to take and hold real and personal property to her separate use, free from the control or disposal of her husband, and free from all liability for his debts, and to enable her to make an effectual disposition of it by deed or will, and thus to place it, if she chooses, wholly beyond the power or reach of her husband; but if she omits to exercise her right of disposal, the acts are not intended to interfere with the laws of descent, in respect to the *real estate*, or the laws giving the husband the right of succession to the *personalty*.

*Seventh District, General Term, December,* 1863.

E. D. SMITH, J. C. SMITH *and* WELLES, *Justices.*

THIS action came on for trial at the Monroe circuit, on the 17th day of October, 1863, before the Hon. T. A. JOHNSON, Justice. A jury trial was waived, and the case tried by the court.

The following facts were agreed upon and found by the court :

1st. That the defendant prior to the year 1850, intermarried with Julia B. Collins, and that on the 11th day of January, 1858, said Julia died, leaving her said husband and four minor children, the fruits of said marriage, her surviving.

2d. That on the 25th day of February, 1850, the said Julia became the owner in fee simple absolute, of the lands and premises described in the complaint, from her mother-in-law, to hold in her own right, and for her sole use and benefit, and remained, together with her said husband in possession thereof until her death.

3d. That on the 17th day of September, 1859, the plaintiffs duly recovered a judgment in this court against the defendant, for the sum of $133.32 damages, and $15.89 costs, a transcript of which judgment was on the 20th day of September, 1859, duly filed, and said judgment docketed in the clerk's office of Monroe county, where said premises are situated.

That on the 27th day of September, 1860, upon an execution duly issued upon said judgment to the sheriff of Monroe county, against the property of said defendant, said sheriff duly sold his, defendant's interest in said premises, and plaintiffs became the purchasers thereof, and that plaintiffs thereafter duly received from said sheriff the usual deed, which was duly recorded in the clerk's office of the county of Monroe, prior to the commencement of this action, and that the defendant on a proper demand refused to deliver possession thereof to the plaintiffs, and that he and his said minor children, the fruits of said marriage aforesaid, have ever since, and do now remain in possession thereof.

The parties then rested, and his Honor Justice JOHNSON, decided that the plaintiffs were not entitled to recover the premises in question, and that the defendant had no life estate therein subject to plaintiffs' judgment and execution, and ordered judgment for the defendant with costs. To which decision and conclusion of law, the plaintiffs then and there duly and severally excepted.

An appeal was taken by the plaintiffs to the general term.

HUNT & GREEN, *for plaintiffs.*
O. M. BENEDICT, *for defendant.*

By the court, JAMES C. SMITH, Justice. I am of the opinion that the estate of a tenant by the curtesy, has survived the acts passed in 1848 and 1849, " for the more effectual protection of the rights of married women," and therefore that the plaintiffs in this case are entitled to recover.

The reasons which lead me to this conclusion, are fully stated in the opinions delivered in *Hurd* agt. *Cass,* (9 *Barb.* 366,) and *Clark* agt. *Clark,* (24 *Barb.* 581,) each of which cases is an authority in point ; and also in *Shumway* agt. *Cooper,* (16 *Barb.* 556) ; *Vallance* agt. *Bausch,* (28 *Barb.* 633), and *Ransom* agt. *Nichol,* (22 *N. Y.* 110) ; which last mentioned cases hold that the acts in question do not divest the husband of his right of succession to his wife's *personalty*, on her decease, except where the power of disposal given to her by the statute is actually exercised. Of course that question is not identical in all respects with the question before us, as the one relates to personal property, and the other to real ; but, as is said by Justice SUTHERLAND, in *Vallance* agt. *Bausch,* " both questions are mere questions of intention—how far the acts were intended to operate, and the reasons which tend to show that the husband's right to his wife's undisposed of personalty on her death, is not inconsistent with the acts, in the main apply equally to the question of the husband's right or estate as tenant by the curtesy."

The construction adopted in the cases referred to, is simply this : That the acts of 1848 and 1849 were undoubtedly intended to allow a married woman to take and hold real and personal property to her separate use, free from the control or disposal of her husband, and free from all liability for his debts, and to enable her to make an effectual disposition of it by deed or will, and thus to place it,

if she chooses, wholly beyond the power or reach of her husband, but that if the wife omits to exercise her right of disposal, the acts were not intended to interfere with the laws of descent, in respect to the real estate, or the laws giving the husband the right of succession to the personalty.

This construction is also expressly affirmed in respect to tenancy by the curtesy, in the recent case of *Lansing* agt. *Gulick*, (26 *How.* 250.)

The only case cited in conflict with these views, is *Billings* agt. *Baker*, (28 *Barb.* 343.) Even if it were in point, I should consider it opposed to the weight of authority, but I am unable to see that it touches the question presented by the case at bar. The plaintiff in that case was a married woman, and the action was brought for the partition of certain real estate which came to her by inheritance subsequently to the acts of 1848-9. Her husband was made a defendant, under the impression that by the birth of issue and seisin of the wife during coverture, he had an *inchoate* interest as tenant by the curtesy. On the trial before a referee, one of the defendants was sworn as a witness in his own behalf. The plaintiff was then advised that her testimony was material in her own behalf, but that she was not a competent witness, by reason of her husband being a party. She thereupon moved at special term to strike out her husband's name as a defendant, to enable her to be a witness in her own behalf; the motion was granted, and on appeal, the order was affirmed. Now it is evident that the only question to be decided was whether the husband *during* coverture, had any interest in the separate estate of his wife, which made it necessary for *her* to bring him into court, to entitle her to a judgment of partition. In respect to that question, the decision is undoubtedly correct, and instead of conflicting with the other cases cited, is in harmony with them. During the *life time of the wife*, the husband had no interest in her real estate which per-

mitted him in any way to interfere with her absolute right of disposal. As she could "convey her lands,  *  *  or any interest or estate therein,  *  *  in the same manner and with like effect as if she were unmarried," she could of course partition them either by agreement with her co-tenants and mutual conveyancers, or by suit; and in the latter case, it seems to me there was no more necessity of making her husband a party, than there would have been of his joining in a partition deed. Even assuming that he would have taken an estate as tenant by the curtesy, in case of her leaving the real estate undisposed of at her death, still, as he could not interfere with her absolute right of disposal in her life time, he had no more right to be heard upon the question whether partition should be made, than her children had, who in the like event, would have taken as heirs subject to his estate. If partition was made, his estate as tenant by the curtesy would be confined to the portion set apart to her. The question whether upon the *death* of a married woman, intestate, her husband takes as tenant by the curtesy in the lands of which she dies seized, had not arisen in respect to the lands of Mrs. Billings, and I think therefore that case can not be regarded as an authority upon this question.

    I am in favor of reversing the judgment for the defendant, and granting a new trial.