PHŒBE BARNES et al., Appellants, *v.* CYRUS UNDERWOOD, 2d, et al., Respondents.

(GENERAL TERM, FOURTH DEPARTMENT, MARCH, 1871.)

The amendment of section 79, 2 R. S., 98, and repeal of section 30, 2 R. S., 75, by the act of 1867 (chap. 782, §§ 11 and 12), have deprived the husband of the right to take, as his own, the personal estate (within the provisions of the married women's acts of 1848 and 1849) of the wife, as to which she dies intestate, except where she dies leaving descendants, in which case he takes the same interest as a widow is entitled to, in the personal estate of her husband, under the statute of distributions.

So held, where the marriage took place in 1857, the personal property of the deceased wife came to her after the marriage, and before the act of 1867 (chap. 782).

The husband is, however, first entitled to administer upon the estate of his deceased wife, under section 29, 2 R. S., 75.

THIS was an appeal from a decree of the surrogate of Chautauqua county, entered upon the final accounting of the respondent, Cyrus Underwood, as administrator of the goods, &c., of Julia R. Underwood, his deceased wife, and ordering and adjudging that said respondent retain in his hands all the money, property, goods and chattels of the said Julia R. Underwood, deceased, remaining after the payment of her debts, and discharging him from further duties and liabilities as administrator.

It appeared that the respondent, Cyrus Underwood, 2d, and Julia R. Barnes, were married in this State, October 22, 1857; that the father of Mrs. Underwood died March 11, 1860, leaving to her a legacy of $1,900; that she converted this legacy into real estate in January, 1862, and again into personal estate in July, 1867; that she received other small sums by gift from her parents; that she held all this property as her separate estate until she died, February 22, 1868, and which then amounted to $3,448.89; that she died intestate, leaving no descendants, but leaving the respondent, Cyrus Underwood, 2d, her husband, and the appellants, her mother, brothers and sisters, and others, the descendants of a deceased brother and

Barnes *v.* Underwood.

sisters, her surviving; that the respondent, Cyrus Underwood, 2d, was appointed administrator of the estate of his deceased wife, by the surrogate of Chautauqua county; that, on his final accounting before said surrogate, April 26, 1870, the appellants appeared, to contest the accounts of the administrator, and claimed that the surplus of the estate should be paid over to them, as next of kin of the intestate; that the surrogate adjudged that the surplus, after paying debts, &c., of the intestate, belonged to the respondent, as husband, and made an order that he retain it, and discharged him from further duties and liabilities as administrator; whereupon this appeal was taken.

*W. S. Hinckley*, for the appellants.

*E. F. Warren*, for the respondents.

Present — MULLIN, P. J., JOHNSON and TALCOTT, JJ.

By the Court — JOHNSON, J.   This is an appeal from the decree of the surrogate of Chautauqua county, and presents the question, whether, under our statutes, as they now exist, the husband, whose wife dies intestate, is entitled to take and enjoy, in his own right, the personal estate and property of such deceased wife, as against her next of kin. The wife of the defendant, Cyrus Underwood, died intestate, leaving between $3,000 and $4,000 of personal estate, which she derived from persons other than her husband, after her marriage with the defendant, which marriage was in 1857. She left no descendants her surviving, and no father, but left a mother, brothers and sisters, and the descendants of brothers and sisters, and her husband, the defendant. The present wife of the defendant is one of such descendants, and niece of his former wife. The surrogate held and adjudged that the defendant, who was the administrator of the deceased wife, was entitled to retain in his hands all her personal estate, after the payment of her debts, without accounting for the same.

In other words, that, at her decease, he took, in his own right, all her personal estate, as matter of law. This was doubtless the rule at common-law, and under the provisions of the Revised Statutes. Section 79 of the Revised Statutes expressly provided that the preceding provisions of section 75, respecting the distribution of estates, should not apply to the estates of married women, but that their husbands might demand, recover, and enjoy the same, as they were entitled by the rules of the common-law. (2 R. S., 98, § 79.) But for the provisions of section 79, under the provisions of section 75 the estates of married women, as well as other persons, would have been distributed as there prescribed.

The language was broad enough to include the estates of all persons. But, by the provisions of section 79, the estates of married women were taken out of the category, and saved to the husband as at common-law. By section 29 (2 R. S., 75), the husband had the first right to administer upon his wife's estate; and by section 30 of the same, if, for any reason, administration was granted to another, such administrator, after paying her debts, was required to pay over to the husband the whole of the assets remaining. The Revised Statutes left the rights of husband and wife, as respects the personal estate of the wife, in all essential respects, as they stood at common-law. At common-law, by the fact of marriage the husband became legally entitled to all the personal estate which the wife had at the time of the marriage, and to all which might come to her thereafter during the coverture. The law vested it in him by virtue simply of his marital relations. This rule of the common-law was abrogated by the legislature of this State, by the statutes of 1848 and 1849, and a new and entirely different rule substituted. By those statutes, the property of the wife was not subject to the disposal of the husband, in any respect, but the wife retained it as her sole and separate property, the same as though she were a single female. After the passage of those acts, as respects all property subsequently acquired by the wife, she was sole

Barnes v. Underwood.

and exclusive owner, the same as though she was single, and the husband had no more right to it, or control over it, than a stranger. She could dispose of it by gift, sale or bequest, independently wholly of her husband. But these acts did not affect the rules of distribution prescribed by the Revised Statutes, in cases where no disposition had been made by the wife of her estate by will or otherwise. The husband was still entitled, as before, to the first right to administer upon his wife's estate, and to recover and enjoy her personal estate, under sections 30 and 79, before referred to, up to the passage of the act of 1867. (Session Laws of 1867, chap. 782.) By that act, section 30 of the Revised Statutes, before mentioned, is repealed, and section 79 amended. This section, as amended, instead of providing, as formerly, that the previous provisions of the statute respecting the distribution of estates "shall not apply to the estates of married women," provides that those provisions "shall apply to the personal estates of married women dying, leaving descendants them surviving." It further provides, that "the husband of *any such* deceased married woman shall be entitled to the same distributive share in the personal estate of his wife to which a widow is entitled in the personal estate of her husband by the provisions of this chapter, and no more." It is thus seen that section 79 is amended by applying the previous provisions respecting distribution to the estates of a certain class of married women, to wit, those dying leaving descendants them surviving, and so far modifying those provisions as to give the husband the same share in such cases that a widow would take by those provisions, and by abrogating altogether that portion of the section which gave to the husband the right to "demand, recover and enjoy" the estate.

The respondent, therefore, can take nothing by virtue of this section 79, as thus amended. His case does not fall within it. But his counsel insists that, because it does not, he may take the whole, as formerly at common-law, by virtue of his relation of husband. But the common-law never

gave to a husband the estate of a deceased wife, by means of her death, when he had no interest in it, or control over it, before the death. Her title had vested in him, and he had become owner during coverture, and by virtue of it. His right sprung from, and was founded in, the existence of the marital relation. Her right and title never devolved upon the husband as a consequence of her death. It is impossible, upon any known principle, to see how the husband can succeed to the rights and property of the wife at her death, having had no previous right or interest, except by the force of some statute. It is wholly by the force of section 79, as amended, that he now takes one-third in the event of her death leaving descendants her surviving. This provision is enacted and stands as the substitute, and in lieu of, the former provision of the same section which gave him the whole.

The right is taken away, or so changed as to conform to, and be in harmony with, the radical change in the law made by the acts of 1848 and 1849. By that change, the husband's rights, as respected his wife's property, were wholly subverted, and she now retains the exclusive ownership and control, up to the very moment of her death. The husband is neither her heir nor next of kin ; and there is no ground upon which his claim to her estate can stand.

Before this amendment, it stood upon section 79 of the statute ; but the amendment takes away that ground, and leaves nothing, except what the section, as amended, saves to the husband.

It cannot be doubted that, previous to this amendment of section 79, the personal estates and property of married women, acquired since the acts of 1848 and 1849, would have been subject to the general rules of distribution provided for in the Revised Statutes, but for their exclusion therefrom by the provisions of that section. Now, the exclusion having been abrogated, and also the provision giving the whole estate to the husband, it would seem necessarily to follow that such estates are now subject to the general provisions of the statute for

the distribution of the personal property of a deceased person intestate.

In the case of *Ransom* v. *Nichols* (22 N. Y., 110), the marriage took place in 1855, and the personal property came to the wife after the marriage. The wife died in 1856, and the right of the husband to the personal estate was put expressly upon the ground that the Revised Statutes gave it to him in terms. This was previous to the amendments before referred to. In the case of *Ryder* v. *Hulse* (24 N. Y., 372), the marriage was previous to the statutes of 1848 and 1849, and the personal property in controversy either came to the wife before the marriage or from the husband afterward by means of the marital relation; and the decision was placed upon the ground that the plaintiff, as husband, had a vested right to the property which those statutes could not take away. WRIGHT, J., who delivered the unanimous opinion of the court, admits that, had it been competent for the legislature to make such a law in respect to property and rights then existing and vested, "the plaintiff would thereby certainly have been divested of any interest in the personal property of his wife; and the right of reducing her choses in action into possession, or assigning or disposing of them, for his own use, or of enjoying them, in the event of her death, would have been taken away."

Neither of the above decisions applies to the case before us. No vested right has been invaded in regard to the property in question, for none ever existed in the husband; and the provision which gave him the right to "demand, recover and enjoy" the same, has been abrogated. It would seem, therefore, that all the consequences suggested in the opinion in *Ryder* v. *Hulse* (*supra*) must inevitably follow in the present case. It is true that section 29 of the statute above referred to has not been repealed, and still stands in full force, except as it has been necessarily affected and modified by the repeal of section 30, and the entire change of section 79, as before noticed. The husband, by virtue of the provisions of section 29, has still the sole right to administer on the estate of his wife, if otherwise competent, and remains liable for her debts

to the extent of her property in his hands as such. By this section it is provided that, in case the husband dies, " leaving any assets of his wife in his hands unadministered, they shall pass to his executors or administrators, as part of his personal estate, but shall be liable for her debts, to her creditors, in preference to the creditors of the husband." It would seem that the legislature, when enacting the statute of 1867, making the change above specified, overlooked the last provision of section 29 of the Revised Statutes, as it does not harmonize with the other provisions of the statute as amended and changed. But, however this may be, it is certain that the defendant can claim nothing under that section. He has taken upon himself the burden of administering, and has, of course, given his bond to "faithfully execute the trust reposed in him," as such administrator.

The only question is, whether the assets in his hands, after the payment of his wife's debts, are subject to distribution under the general provisions of the statute on that subject, as prescribed by section 75, aforesaid.

I have already expressed the opinion that, as that section stands since the amendment of 1867, the personal estate of a deceased wife is included in its provisions. The language of the section is : "Where the deceased shall have died intestate, the surplus of his personal estate remaining after the payment of his debts," &c., " shall be distributed to the widow, children, and next of kin, of the deceased," &c. There is now, since the amendment of section 79, no limitation or restriction upon this provision. It must be distributed; and the only change in the distribution to be made is, that the husband, who is still to be administrator, is entitled to a certain distributive share, in case his wife leaves descendants her surviving. Section 79, as amended, instead of operating as an exception to section 75, as formerly, is now an amendment of it, adding a new provision, or subdivision, in a given case, which does not arise here. The legislative intention to keep the personal estate of the wife, after her death, separate and free from the control and disposal of the husband, the same as before, except

Barnes *v.* Underwood.

in the single case specified, is, we think, by the repeal and amendment before referred to, rendered exceedingly clear.

The decree of the surrogate is, therefore, erroneous, and should be reversed, and distribution of the estate ordered and decreed according to the provisions of said section 75.

Ordered accordingly.